[Civ. No. 10435. Third Dist. June 19, 1962.]

JOHN A. WALLACE, Plaintiff and Respondent, v. STATE PERSONNEL BOARD et al., Defendants and Appellants.

Stanley Mosk, Attorney General, Willard A. Shank, Deputy Attorney General, Robert E. Reed and John B. Matheny for Defendants and Appellants.

Frank G. Finnegan for Plaintiff and Respondent.

PIERCE, J.—Appellants (respondents in the trial court) appeal from a writ of mandate requiring the State Personnel Board to determine the amount of salary to which respondent (petitioner in the trial court) is entitled for the period from October 16, 1957, to December 18, 1959. We will refer to the parties hereinafter by their designations in the trial court, for the reason that we are adopting, for the most part, the opinion of the trial judge.

Respondent is a senior electrical engineer with the State Division of Architecture, a civil service position. Both this litigation and an earlier proceeding in mandamus stem from a request by petitioner for three months' sick leave in 1955, which request had been disallowed and his absence treated as an automatic resignation from state service under Government Code, section 19503. An appeal to the State Personnel Board, and from the adverse ruling there via the mandamus route through the superior court to this court resulted in a previous holding here that a civil servant could be ill (and thus entitled to sick leave under Cal. Admin. Code, tit. 2, § 401) due to mental and emotional causes as well as physical (the mental illness in this case being attended by, if not due to, the transfer of the place of employment from Sacramento to Los Angeles). The case was remanded for further proceedings. Chronology of facts through 1958 can be read in the opinion in *Wallace* v. *State Personnel Board,* 168 Cal.App.2d 543 [336 P.2d 223].

On December 18, 1959, respondent Personnel Board granted petitioner's sick-leave request, reinstated him, and ordered payment of salary for the period of sick leave in 1955 and for the period from December 19, 1959, to the date of reinstatement and return to work, April 1, 1960. After a further hearing the board determined that petitioner was not entitled to payment of any salary for the period from October

16, 1957, to December 19, 1959, based upon a finding that representatives of the Division of Architecture had ''offered to permit'' respondent Wallace to resume his duties on October 16, 1957 ''provided he serve a 6-month probationary period.'' Wallace had refused. It was stated in the finding that this would not have prejudiced his right to reinstatement as a permanent employee (upon the ultimate disposition of his then pending appeal favorable to him) and that he would have received the same salary.

The validity of this finding was the sole issue in a petition for writ of mandate by petitioner to the superior court and is the sole issue here. The trial court decreed the finding erroneous.

The briefs of the Attorney General raise the same points urged in the trial court and answered there by an opinion by the trial judge, Honorable Albert H. Mundt, which we find agreeable to our own views and, therefore, adopt (with a few deletions to avoid repeating that which is stated above, or matter unnecessary to appellate decision, and two footnote interpolations):

''[ ]* This paragraph [i.e., the finding referred to above] is the only finding which is in dispute and therefore presents the only issue before the Court at this time. This involves, [ ], a determination as to whether or not the evidence supports the finding aforesaid and whether or not said finding is contrary to law.

''The Division of Architecture through its Deputy Chief, Mr. Hubert S. Hunter, on October 16, 1957, during a conference in his office which was attended by the petitioner and his attorney and others, offered employment to petitioner as a Senior Electrical Engineer, the identical job from which he had been removed, with the condition, however, that the petitioner serve a new probationary period, the intent apparently being that this offer of employment was being tendered under the authorization of Government Code Section 19140. Respondents assert that insofar as they were concerned the petitioner was on that date legally a resigned employee for all intents and purposes. This was not true. Petitioner was, at that time, a person who had been separated from his position by action of the State. The fact that the State elected

*Brackets together, in this manner [ ], are used to indicate deletions from the opinion of the superior court.

to designate his separation from his employment a termination by reason of an automatic resignation did not make it so.

 ''Section 19140 permits the State Personnel Board to approve the reinstatement of any person who is separated from his position through resignation without fault or delinquency on his part, it being required, however, under said section that the employee so reinstated serve the probationary period prescribed for the class before regaining permanent status in such position. The Court notes, first, that the State Personnel Board did not approve said offer of employment and that there is nothing in the record that indicates said Board would have done so during the pendency of the litigation then under way. Second and I think more importantly, the petitioner was not at that time of the class contemplated by Section 19140 and it seems obvious to this Court that the officers of the Division of Architecture did not have the legal authority to force him into that class and thereby subject him to a probationary term in a position in which he had already obtained permanent status of which he had been illegally deprived. They were treating him as a resigned employee and making a conditional offer of reemployment. At the time he was separated from his employment it was the contention of the State that he was absent without leave for a period in excess of five days and that he had therefore automatically resigned under the provisions of Section 19503 which has a further provision that in order to be reinstated the employee must make a satisfactory explanation to the Personnel Board as to the cause of his absence and his failure to obtain leave therefor. Mr. Hunter in tendering petitioner reemployment without the permission of the Personnel Board attached the condition of the probationary period because it then appeared that the State was justified in separating Mr. Wallace since at that time the Superior Court had determined the issue in favor of the Personnel Board and quoting Mr. Hunter, 'We felt that in all justification to our position we could not wipe the slate clean, so to speak, without some sort of recognition on his part that his action had been at fault.'

''In other words according to Mr. Hunter, whose testimony is not disputed, the offer of employment was conditional on the probationary period, the possibility of rejection during that probationary period, and a recognition by Mr. Wallace that the State had been right and that he had been wrong, a position diametrically opposed to the position that Mr. Wallace

was diligently pursuing through the courts of the State. In brief, if he was to return he was to do so with a dirty slate.

"I cannot agree that Mr. Wallace was, under these circumstances, required to mitigate damages by accepting the employment, if indeed the Personnel Board had so approved, with the condition that the State had annexed thereto, namely that he was required to return with a black mark on his record and the possibility of a future rejection as an unsatisfactory employee.[1] Mr. Wallace contends that as a condition of the reinstatement he was also to dismiss the pending proceedings and terminate the litigation. This Court believes there is substantial evidence from which to find this was actually a condition. However, since there is a conflict in the evidence in that respect, the Board could properly determine, without interference from this Court, that such a condition was not imposed and that appellant was not required to dismiss his appeal.[2] [ ]

 "This Court finds and determines that the decision of the Personnel Board based on the finding aforesaid is contrary to law and that the Board could not properly deprive the petitioner of his salary during the period stated by reason of said offer of employment.

 "However, the determination aforesaid does not dispose of the case. There is in the record evidence from which the Board might well have determined that appellant might reasonably have earned a substantial sum of money in private employment during the period of October 16, 1957, to December 18, 1959, if he had made reasonable efforts to obtain employment and thus mitigate his damage. It appears, however, that the Board having erroneously determined that the employee might reasonably have accepted the offer of the State and returned to work, thereby mitigating damages, did not consider and evaluate the evidence with respect to his potential in private employment during the period in question. The

---

[1]Another concomitant of acceptance of probationary status would have been a loss pro tempore of sick leave, accruing vacation credits, and the right to have a hearing if punitive action were taken against him.

[2]Regardless of the question of whether or not the condition of dismissal of the appeal was exacted as a matter of fact, it might very well have had that effect as a matter of law, particularly in view of the condition which *was* exacted that Wallace must admit the State had been right and he had been wrong. Having thus "confessed" how could he be heard to continue an appeal in which he urged that he was right and the State wrong? (See *State* ex rel. *Ball* v. *Knoxville*, 177 Tenn. 162 [147 S.W.2d 97, 145 A.L.R. 762, 764].)

matter is therefore remanded to the Personnel Board of the State of California for decision as to what compensation the employee earned or might reasonably have earned in employment other than the proffered job in the Department of Public Works during the period from October 16, 1957, to December 18, 1959. [] "

The judgment is affirmed.

Peek, P. J., and Schottky, J., concurred.